1
2
3
4
5
6
7
8
9
10

**FILED**

AUG 05 2015

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11  TIMOTHY TYRONE SIMPSON, | No. C 14-1060 LHK (PR) |
| 12  Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; |
| 13  v. | DENYING CERTIFICATE OF APPEALABILITY |
| 14  GARY SWARTHOUT, | |
| 15  Respondent. | |

16
17
18
19
20
21

        Petitioner, a state prisoner proceeding *pro se*, filed a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254. Respondent was ordered to show cause why the petition should

not be granted.[1] Respondent has filed an answer. Petitioner has filed a reply, which the court

construes as a traverse. Having reviewed the briefs and the underlying record, the court

concludes that petitioner is not entitled to relief, and DENIES the petition.

### PROCEDURAL HISTORY

22
23
24
25
26

        On October 6, 2010, petitioner was convicted after a jury trial of a lewd or lascivious act

on a child under the age of 14 (Victim 2); sexual penetration by force, violence, duress, menace

or fear of bodily injury (Victim 1); rape by force, violence, duress, menace or fear (Victim 1);

and sexual battery (Victim 3). As to the charges regarding Victim 1 and Victim 2, the jury found

27

28

        [1] This case was reassigned to the undersigned judge on October 9, 2014, after respondent
declined to consent to magistrate judge jurisdiction.

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\LHK\HC.14\Simpson060hcden.wpd

1 | true multiple victims enhancements. Petitioner admitted a prior strike and a prior felony

2 | conviction. On November 8, 2010, the trial court sentenced petitioner to a total term of 90 years

3 | to life plus 15 years, and 90 days in county jail for the misdemeanor sexual battery conviction.

4 | On September 26, 2011, the California Court of Appeal reversed and remanded the case.

5 | It instructed the trial court to reduce petitioner's convictions regarding Victim 1 to the lesser

6 | included offenses of assault with intent to commit sexual penetration (count 2) and assault with

7 | intent to commit rape (count 3), and re-sentence petitioner. On November 30, 2011, the

8 | California Supreme Court denied review.

9 | On September 10, 2012, the trial court re-sentenced petitioner, as instructed, to a total

10 | term of 33 years in prison. On November 14, 2013, the California Court of Appeal affirmed. On

11 | January 21, 2014, the California Supreme Court denied review.

12 | Petitioner filed the underlying federal habeas petition on March 6, 2014.

13 | **BACKGROUND**

14 | The following facts are taken from the Court of Appeal's opinion in *People v. Simpson*,

15 | No. H036255, 2011 WL 4436758 (Cal. App. Sept. 26, 2011).

16 | In May 2008, Victim 1 was 16 years old. *Id.* at *2. At that time, Victim 1 was living

17 | with her aunt and legal guardian, A. *Id.* Victim 1 referred to petitioner as "Uncle Tim." *Id.*

18 | Petitioner, who is Victim 2's father, sometimes lived with A. and Victim 1. *Id.* On May 11,

19 | 2008, Victim 1 was sleeping on the sofa, and awoke to find petitioner, who was naked, on top of

20 | her. She felt his fingers inside her vagina, noticed her pants and underwear had been removed,

21 | and her legs had been spread apart. *Id.* Victim 1 felt petitioner insert his penis about a quarter of

22 | the way into her vagina. *Id.* Victim 1 told petitioner to get off, and pushed him away. *Id.*

23 | Victim 1 grabbed her clothes and ran to her bedroom. *Id.* Petitioner entered her bedroom and

24 | told her that no one would believe her if she said anything and she should not tell anyone what

25 | happened. *Id.* Later that morning, Victim 1 told A. what had happened. *Id.* Victim 1 told A.

26 | that Victim 1 would not report it to the police, however, because Victim 1 was embarrassed and

27 | was worried about splitting up the family. *Id.*

28 | On June 13, 2009, Victim 2, who was 13 at the time of trial, had fallen asleep on the

1  couch. *Id.* at *3. Around midnight or 1:00 a.m., Victim 2 woke up and felt petitioner touching
2  her thigh over her clothing, and moving his hand toward her crotch. *Id.* Victim 2 was not sure
3  whether petitioner's hand reached her crotch, but she kicked her legs at his hands and petitioner
4  walked away. *Id.* Victim 2 fell back asleep after that. *Id.* When Victim 2 woke up, she told her
5  mother what happened, and told her mother that her "private spot" itched. *Id.*

6  Victim 3 was visiting Victim 1 in June 2009. *Id.* One night, Victim 3 was watching
7  television with Victim 1, but got tired and went to sleep in Victim 1's bedroom. *Id.* Around
8  4:00 a.m., Victim 3 woke up and petitioner was on the bed next to her, rubbing her bottom
9  through her pajamas. *Id.* at *4. Victim 3 believes petitioner did so for about 15 seconds, but
10 when she started to get up, petitioner quickly left the room. *Id.* Victim 3 went out to the living
11 room where Victim 1 was sleeping, and slept next to her. *Id.* Between 7:00 and 8:00 a.m.,
12 Victim 3 woke Victim 1 up and explained to her what had happened. *Id.*

13 At trial, a prior victim testified that she met petitioner in 1997 when she was 15 years old
14 at an apartment complex with her friends. *Id.* at *5. After petitioner drove the victim and her
15 friends to get food, petitioner told the victim he wanted to talk to her. *Id.* She agreed, thinking
16 that it would be a brief conversation. *Id.* Everyone except the victim and petitioner got out of
17 the van, and petitioner drove down a few streets away from the apartment complex. *Id.* at *5-6.
18 Petitioner asked the victim if she wanted to make some money, and the victim agreed as long as
19 it was legal. *Id.* Petitioner drove onto the freeway and pulled over into a sparsely populated
20 neighborhood. *Id.* Petitioner began touching the victim's leg, and told her that she had to show
21 her loyalty. *Id.* The victim began to scream and cry, and petitioner told her that someone had
22 sent him to kill her, and that she needed to prove her loyalty. *Id.* Petitioner raped the victim, and
23 afterward, warned her not to say anything to anyone. *Id.*

24 The court will provide further relevant facts as necessary in the discussion section of this
25 order.

26 **STANDARD OF REVIEW**

27 This court may entertain a petition for writ of habeas corpus "in behalf of a person in
28 custody pursuant to the judgment of a State court only on the ground that he is in custody in

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\LHK\HC.14\Simpson060hcden.wpd          3

1  violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The
2  petition may not be granted with respect to any claim that was adjudicated on the merits in state
3  court unless the state court's adjudication of the claim: "(1) resulted in a decision that was
4  contrary to, or involved an unreasonable application of, clearly established Federal law, as
5  determined by the Supreme Court of the United States; or (2) resulted in a decision that was
6  based on an unreasonable determination of the facts in light of the evidence presented in the
7  State court proceeding." 28 U.S.C. § 2254(d).

8        "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state
9  court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of
10  law or if the state court decides a case differently than [the] Court has on a set of materially
11  indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the
12  'reasonable application clause,' a federal habeas court may grant the writ if the state court
13  identifies the correct governing legal principle from [the] Court's decisions but unreasonably
14  applies that principle to the facts of the prisoner's case." *Id.* at 413.

15        "[A] federal habeas court may not issue the writ simply because the court concludes in its
16  independent judgment that the relevant state-court decision applied clearly established federal
17  law erroneously or incorrectly. Rather, the application must also be unreasonable." *Id.* at 411.
18  A federal habeas court making the "unreasonable application" inquiry should ask whether the
19  state court's application of clearly established federal law was "objectively unreasonable." *Id.* at
20  409.

21        The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is
22  in the holdings (as opposed to the dicta) of the United States Supreme Court as of the time of the
23  state court decision. *Id.* at 412. Clearly established federal law is defined as "the governing
24  legal principle or principles set forth by the [United States] Supreme Court." *Lockyer v.*
25  *Andrade*, 538 U.S. 63, 71-72 (2003).

26                                    **DISCUSSION**

27        Petitioner raises the following claims in his petition: (1) the trial court erred in admitting
28  evidence of a prior sexual offense; (2) the trial court erred in admitting evidence of child sexual

1   abuse accommodation syndrome (CSAAS); and (3) trial counsel rendered ineffective assistance

2   by (a) failing to state all possible grounds to exclude CSAAS evidence, and (b) failing to object

3   to the imposition of consecutive sentences.[2]

4   I.     Admission of prior sexual offense evidence

5         Petitioner claims that the trial court should not have permitted a prior victim to testify

6   about facts underlying petitioner's 1997 conviction for unlawful sexual intercourse by a person

7   over 21 years old with a minor under 16 years old. Specifically, petitioner argues that the

8   evidence should have been excluded as overly prejudicial. Petitioner states that the only

9   similarity between the underlying convictions and the 1997 offense was that the victim in the

10   1997 offense was also underage at the time of the offense.

11         The California Court of Appeal considered this claim and rejected it. *Simpson*, 2011 WL

12   4436758, at *8.

13         The admission of evidence is not subject to federal habeas review unless a specific

14   constitutional guarantee is violated or the error is of such magnitude that the result is a denial of

15   the fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021,

16   1031 (9th Cir. 1999). The United States Supreme Court "has not yet made a clear ruling that

17   admission of irrelevant or overtly prejudicial evidence constitutes a due process violation

18   sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir.

19   2009). In fact, the United States Supreme Court has expressly left open the question of whether

20   admission of propensity evidence violates due process. *Estelle v. McGuire*, 502 U.S. 62, 75 n.5

21   (1991). Based on the United States Supreme Court's reservation of this issue as an "open

22   question," the Ninth Circuit has held that a petitioner's due process right concerning the

23   admission of propensity evidence is not clearly established as required by AEDPA. *See Alberni

24   v. McDaniel*, 458 F.3d 860, 866-67 (9th Cir. 2006); *accord Mejia v. Garcia*, 534 F.3d 1036,

25   1046 (9th Cir. 2008) (reaffirming *Alberni* and stating that there is "no Supreme Court precedent

26

27        [2] Although petitioner raised two additional claims in his petition, on June 13, 2014, the

28   court dismissed those claims (Claims 4 and 5) for failure to state a cognizable federal habeas
    claim. (Docket No. 5.)

1 establishing that admission of propensity evidence, as here, to lend credibility to a sex victim's

2 allegations, and thus indisputably relevant to the crimes charged, is unconstitutional."). As

3 federal courts may grant habeas relief only if a state court decision is contrary to, or an

4 unreasonable application of clearly established federal law as determined by the United States

5 Supreme Court, *see* 28 U.S.C. § 2254(d)(1), there can be no federal habeas relief on this claim

6 because there is no clearly established federal law. Therefore, a state court's rejection of such a

7 claim cannot be grounds for federal habeas relief. *Larson v. Palmateer*, 515 F.3d 1057, 1066

8 (9th Cir. 2008).

9       Furthermore, courts have "routinely allowed propensity evidence in sex-offense cases,

10 even while disallowing it in other criminal prosecutions." *United States v. LeMay*, 260 F.3d

11 1018, 1025 (9th Cir. 2001)."

12       In sum, because the United States Supreme Court expressly has left open the question

13 presented in the petition, the state court's rejection of petitioner's claim that the trial court's

14 admission of propensity evidence under section 1108 violated his due process rights was not

15 contrary to, or an unreasonable application of, clearly established United States Supreme Court

16 law.[3]

17 II.      Admission of CSAAS evidence

18       Petitioner claims that the trial court violated his right to due process when it allowed Carl

19 Lewis, an expert on the subject of CSAAS, to testify about CSAAS because the testimony was

20 improper and irrelevant expert testimony, and was overly prejudicial.

21       At trial, Lewis testified that CSAAS "is a tool used by those dealing with child sexual

22

23       [3] To the extent petitioner asserts that Section 1108 is unconstitutional, that claim is not
24 properly before the court because petitioner raises it for the first time in his traverse. (Traverse
at 3-4.)  A traverse is not the proper pleading to raise additional grounds for relief.  In order for
25 the respondent to be properly advised of additional claims, they should be presented in an
amended petition or in a statement of additional grounds. *Cacoperdo v. Demosthenes*, 37 F.3d
26 504, 507 (9th Cir. 1994).  Nonetheless, even assuming this claim is properly before the court, it
is without merit.  There is no clearly established law holding that Section 1108 is
27 unconstitutional.  Moreover, courts have considered the constitutionality of Section 1108 or its
28 federal counterpart, Rule 414, and have consistently upheld it. *See, e.g., LeMay*, 260 F.3d at
1025; *People v. Falsetta*, 21 Cal. 4th 903 (1999).

1 abuse intervention to not automatically rule out the possibility of such abuse due to preconceived
2 notions of how a child victim should behave. There are five categories which comprise CSAAS:
3 secrecy; helplessness; entrapment and accommodation; delayed, conflicted, unconvincing
4 disclosure; and retraction." *Simpson*, 2011 WL 4436758, at *6. Lewis described each category,
5 and explained that the categories were "intended to assist in explaining unexpected
6 circumstances which occur regularly in cases of child sexual abuse." *Id.* at *7.

7 The California Court of Appeal rejected petitioner's claim. It stated that petitioner's
8 argument that expert testimony on CSAAS was unnecessary because the behavior of child abuse
9 victims was common knowledge of jurors is contrary to California case law. *Id.* at *13. Further,
10 the state appellate court recognized that "testimony concerning CSAAS was helpful in
11 explaining the different stages of reaction that some victims progress through. Jurors may have
12 an understanding that victims of abuse are reluctant to report the offense, but they may not
13 understand the reasons for the delayed reporting, or why the victims did not retaliate.
14 Accordingly, the trial court could have reasonably found that the expert testimony would add to
15 the jurors' common fund of information regarding the reactions of abuse victims." *Id.* (citation
16 omitted). Finally, the state appellate court rejected petitioner's claim that the admission was
17 overly prejudicial. *Id.* at *14. It reasoned that the testimony was not specific to the facts of this
18 case, but as a general explanation of how child abuse victims may act. *Id.* It also noted that the
19 trial court specifically instructed the jury twice on the proper use of the evidence. *Id.*

20 Under federal review, "[t]he admission of evidence does not provide a basis for habeas
21 relief unless it rendered the trial fundamentally unfair in violation of due process." *Holley*, 568
22 F.3d at 1101. Petitioner cites to no United States Supreme Court authority to support his claim
23 that the trial court's decision to admit the CSAAS evidence violated his right to due process.

24 In addition, the Ninth Circuit has found that the admission of CSAAS evidence in
25 child-sexual-abuse cases in federal cases is proper when "the testimony concerns general
26 characteristics of the victims and is not used to opine that a specific child is telling the truth."
27 *Brodit v. Cambra*, 350 F.3d 985, 991 (9th Cir. 2003) (citing *United States v. Bighead*, 128 F.3d
28 1329 (9th Cir. 1997) (per curiam)). Here, the trial court only allowed the CSAAS expert to

1   testify about the general nature of the syndrome. *Simpson*, 2011 WL 4436758, at *14. The

2   expert explained to the jury that he did not interview any of the witnesses, investigate this case,

3   or review any reports or transcripts from this case. *Id.* at *7. Thus, the CSAAS testimony

4   complied with the limits set forth by the Ninth Circuit in *Brodit*, and the admission of the

5   testimony did not violate petitioner's due process rights. *See, e.g., Manson v. Grounds*, No. 12-

6   6043 CRB (PR), 2014 WL 688614, at *7-8 (N.D. Cal. Feb. 20, 2014) (rejecting petitioner's

7   challenge to the admission of CSAAS evidence as foreclosed by *Brodit*).

8        Accordingly, the state court's rejection of this claim was not contrary to, or an

9   unreasonable application of, clearly established United States Supreme Court law.

10  III.    Ineffective assistance of counsel

11       Petitioner alleges that counsel rendered ineffective assistance by: (a) failing to state all

12  possible grounds for the exclusion of CSAAS evidence, and (b) failing to object to the

13  imposition of consecutive sentences.

14       A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth

15  Amendment right to counsel, which guarantees not only assistance, but effective assistance of

16  counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Normally, in order to prevail on a

17  Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First,

18  he must establish that counsel's performance was deficient, i.e., that it fell below an "objective

19  standard of reasonableness" under prevailing professional norms. *Id.* at 687-88. Second, he

20  must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a

21  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

22  would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to

23  undermine confidence in the outcome. *Id.*

24      A.    Failing to state all possible grounds for the exclusion of CSAAS evidence

25       Petitioner does not elaborate on his claim. A review of the record shows that counsel

26  objected to the inclusion of CSAAS evidence on the basis of relevance and California Evidence

27  Code § 352. (Resp. Ex. 3 at 47.) During a hearing on the prosecution's motion to admit the

28  CSAAS evidence, counsel also commented that expert testimony on CSAAS was unnecessary

1  because the subject matter was not beyond the common knowledge of the jurors. (*Id.* at 47-48.)

2  However, counsel did not formally object on this basis.

3      Petitioner does not specify what other grounds counsel should have raised to exclude the

4  CSAAS evidence. In addition, on direct appeal, petitioner conceded that the CSAAS evidence

5  "was in accordance with guidelines set forth in applicable current California caselaw." *Simpson*,

6  2011 WL 4436758, at *13. Thus, petitioner fails to establish that defense counsel's failure to

7  raise all possible grounds for the exclusion of CSAAS testimony fell below an objective standard

8  of reasonableness. *See Toomey v. Bunnell*, 898 F.2d 741, 743 (9th Cir. 1990) (stating that a

9  habeas petitioner has the burden of showing that counsel's performance was deficient); *see also*

10 *Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995) (concluding that conclusory or bald allegations

11 of ineffective assistance of counsel do not warrant federal habeas relief).

12     Even assuming that counsel's performance was somehow deficient by failing to object to

13 the CSAAS evidence on other unspecified grounds, petitioner also has the burden to show that

14 counsel's performance was prejudicial. *See Rios v. Rocha*, 299 F.3d 796, 813 n.23 (9th Cir.

15 2002) (rejecting two ineffective assistance of counsel claims based on petitioner's failure to

16 produce evidence of prejudice). Petitioner has not done so. The state appellate court rejected

17 petitioner's ineffective assistance of counsel claim, stating that even if counsel had formally

18 objected to the CSAAS testimony on the basis that expert testimony is no longer needed on this

19 subject, the objection would have been meritless. *Simpson*, 2011 WL 4436758, at *13. Further,

20 petitioner has failed to set forth any evidence suggesting that, had petitioner's counsel raised any

21 other ground for the exclusion of CSAAS evidence, the outcome of trial would have been

22 different.

23     Accordingly, the state court's rejection of this claim was not contrary to, or an

24 unreasonable application of, clearly established United States Supreme Court law.

25     B.    Failure to object to imposition of consecutive sentences

26     Petitioner claims that counsel rendered ineffective assistance when counsel failed to

27 object to the imposition of consecutive sentences as to counts 2 and 3, both of which concerned

28 Victim 1, imposed by the trial court after remand. Specifically, petitioner argues that counsel

1  should have argued that the trial court failed to establish a factual predicate for imposing
2  consecutive sentences.

3      The California Court of Appeal considered and rejected this claim.  Applying California
4  law, it stated that in order for a trial court to sentence a defendant to a consecutive term under
5  California Penal Code § 667.6(c), the trial court must state its reasons for the record.  *People v.*
6  *Simpson*, No. H038847, 2013 WL 6019889, *5-6 (Cal. App. Nov. 13, 2013).  Further, a
7  consecutive sentence is proper even if supported by only one aggravating factor.  *Id.* at *6.
8  Reviewing the record, the state appellate court concluded that the trial court expressly stated that
9  it was choosing to sentence petitioner under section 667.6(c), and was going to impose a
10  consecutive term "based on the fact that [the offenses] were separately manifested intents to do
11  separate acts of violence against a single victim."  *Id.* at *7.  The state appellate court also noted
12  that even if the trial court's statement of reasons was insufficient, because "numerous
13  aggravating factors" were present, there was no reasonable probability that the outcome would
14  have been different even if counsel had objected to an insufficient statement of reasons.  *Id.*

15      As an initial matter, the United States Supreme Court has not decided what standard
16  should apply to counsel's performance in non-capital sentencing proceedings.  *Cooper-Smith v.*
17  *Palmateer*, 397 F.3d 1236, 1244 (9th Cir. 2005).  *Strickland* declined to "'consider the role of
18  counsel in an ordinary sentencing, which . . . may require a different approach to the definition
19  of constitutionally effective assistance,'" and no later United States Supreme Court decision has
20  done so, either.  *Id.* (quoting *Strickland*, 466 U.S. at 686).  Consequently, there is no clearly
21  established United States Supreme Court precedent governing ineffective assistance of counsel
22  claims in a noncapital sentencing context.  *See Davis v. Grigas*, 443 F.3d 1155, 1158-59 (9th Cir.
23  2006); *Cooper-Smith*, 397 F.3d at 1244-45; *cf. Daire v. Lattimore*, 780 F.3d 1215, 1221-22 (9th
24  Cir. 2015) (intimating that *Davis* and *Cooper-Smith*'s conclusion should be re-examined in light
25  of post-*Strickland* United States Supreme Court cases, but recognizing that "we are bound by
26  prior panel opinions and can only reexamine them when the reasoning or theory of our prior
27  circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher
28  authority") (internal quotation marks omitted).  Because there is no clearly established United

1  States Supreme Court standard to analyze ineffective assistance of counsel claims in a noncapital
2  sentencing, petitioner is not entitled to habeas relief on this ground.

3       Alternatively, even assuming that *Strickland* applies to this claim, petitioner cannot
4  demonstrate that counsel's performance was deficient, or that petitioner was prejudiced. In light
5  of the state appellate court's conclusion that, based on state law, the trial court's statement of
6  reasons was sufficient to impose consecutive sentencing, and that any objection trial counsel
7  could have made was unlikely to change the outcome, the court cannot say that there is a
8  reasonable probability that, but for counsel's failure to object, the result of the proceeding would
9  have been different.

10      Accordingly, the state court's rejection of this claim was not contrary to, or an
11 unreasonable application of, clearly established United States Supreme Court law.

12                                   **CONCLUSION**

13      The petition for writ of habeas corpus is DENIED.[4]

14      The federal rules governing habeas cases brought by state prisoners require a district
15 court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its
16 ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. Petitioner has
17 not shown "that jurists of reason would find it debatable whether the petition states a valid claim
18 of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

19 Accordingly, a COA is DENIED.

20      The clerk is instructed to enter judgment in favor of respondent, terminate all pending
21 motions, and close the file.

22 ///

23

24      [4] Petitioner's motion for an evidentiary hearing and motion to supplement the reply are
25 denied. In light of the court's denial of this federal habeas petition, the request for an evidentiary
   hearing is moot. In petitioner's motion to supplement the reply, petitioner asserts that he has
26 new evidence to support his claim that his right to due process was violated. Petitioner provides
   a copy of his "new evidence" by attaching a copy of California Senate Bill No. 1058, which was
27 approved, and codified in California Penal Code § 1473. California Penal Code § 1473 sets forth
28 who is authorized to prosecute a state writ of habeas corpus. It is not relevant to this federal
   proceeding. Thus, petitioner's motion to supplement the reply is denied.

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\LHK\HC.14\Simpson060hcden.wpd        11

1      IT IS SO ORDERED.

2  DATED: _8/5/2015_           _Lucy H. Koh_

3                               LUCY H. KOH
United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\LHK\HC.14\Simpson060hcden.wpd    12